IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAWRENCE L. OAKLEY, S12637, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24-cv-2611-MAB |
| ) | |
| ADAM C. RAKERS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Lawrence Oakley, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In a timely amended complaint (Doc. 13), Plaintiff claims that Defendant Rakers used unnecessary force against him and also issued him a fabricated disciplinary report in retaliation for an interaction they had on December 13, 2022. This case is now before the Court for preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## THE AMENDED COMPLAINT

On December 13, 2022, Plaintiff attempted to leave the cell house to attend yoga therapy. (Doc. 13 at 3). An officer told him he could not go to yoga because he had a lay-in permit, so he asked to talk with a lieutenant about the issue. Defendant Rakers entered the unit and allegedly began to belligerently yell at Plaintiff about yoga therapy. Plaintiff claims that he asked to further discuss the issue with a shift commanding major, and he told Rakers that no matter what he would be filing a grievance about the issue. (Doc. 13 at 3). He claims that Rakers then yelled at him, rammed his head into the doorframe, and applied handcuffs. Plaintiff alleges that Rakers placed him in restrictive housing based on a falsified disciplinary report. (Doc. 13 at 7). Plaintiff complains that this interaction constituted retaliation in violation of the First Amendment, and reckless use of force in violation of the Eighth Amendment. (Doc. 13 at 7). Plaintiff seeks a preliminary and permanent injunction that requires Rakers to stay at least 150 feet away from him. (Doc. 13 at 5). He also seeks monetary compensation.

In support of the complaint Plaintiff submitted a grievance, a disciplinary report from the December 13, 2022, interaction, and an Adjustment Committee Summary for a different incident of discipline in October of 2022. The disciplinary report indicates that Rakers wrote him up on December 13, 2022, for allegedly refusing multiple direct orders from Rakers, and because Plaintiff assumed an "aggressive stance" towards Rakers. (Doc. 13 at 13). The disciplinary report also suggests that Plaintiff continued to yell at the

top of his lungs as Rakers circulated about the unit, which made tensions high. The Adjustment Committee hearing was conducted on December 22, 2022, per the Final Summary Report that was attached to Plaintiff's original complaint. (Doc. 1 at 4-5). In support of the Amended Complaint, Plaintiff also submitted a grievance on January 9, 2023, that specifically challenged the December 13, 2022, disciplinary report. (Doc. 13 at 15-16).

Based on the allegations in the Complaint, the Court re-designates the following Claims that were previously discussed in association with the original complaint:

> **Claim 1:** Eighth Amendment excessive force claim against Defendant Rakers for slamming Plaintiff's head into a doorframe;
>
> **Claim 2:** First Amendment retaliation claim against Defendant Rakers for issuing a disciplinary report when Plaintiff complained about being barred from yoga therapy.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

## DISCUSSION

Plaintiff has not added any factual allegations to his claim concerning the alleged use of force by Defendant Rakers. The Court previously explained that although there is

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

no minimum injury benchmark for an Eighth Amendment excessive force claim, the lack of any information about any physical harm whatsoever is insufficient to state a claim. *See e.g., Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (an inmate who claims of a push or shove that causes no discernible injury almost certainly fails to state a claim). Given that this claim remains entirely unchanged, the Court still finds it insufficient as pled.

By contrast, Plaintiff has made new allegations in support of his retaliation claim. Notably, he now alleges that during the back and forth with Defendant Rakers about yoga therapy, he asked Rakers to speak with a supervisor and told Rakers regardless of the outcome he would file a grievance. He also alleges that in response to these statements, Rakers compiled a fabricated disciplinary report that resulted in him being sent to restrictive housing. To prevail on a First Amendment retaliation claim, Plaintiff must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, Plaintiff alleges that he spoke to Rakers about accessing therapeutic yoga, and he expressed to Rakers that he would file a grievance about the situation. He claims Rakers then fabricated a disciplinary report alleging he disobeyed a direct order and yelled at him, which Plaintiff maintains is untrue. These allegations fall directly on the cusp of what may or may not be sufficient to make out a retaliation claim. As the Court explained in the order of initial review, backtalk or disruptive conduct by an inmate to a

guard is not protected speech. *See e.g., Kervin v. Barnes*, 787 F.3d 833, 834-35 (7th Cir. 2015) (backtalk is not constitutionally protected speech). By contrast, it is widely accepted the grievance activity generally is protected speech. *See e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Here, it appears from the disciplinary documents submitted that the premise for Plaintiff's placement in restrictive housing, and the reason for the disciplinary ticket, was his verbal interaction with Rakers on December 13, 2022. Both the disciplinary report that he attached to his amended complaint, and the Adjustment Committee Summary that he attached to his original complaint, show that Rakers wrote him up for alleged yelling and refusing to move out of Rakers' way near the control pod. (Doc. 13 at 13-14). By contrast, Plaintiff contends that Rakers fabricated the ticket, and he claims that during the conversation with Rakers he expressed an intention to file a grievance about the interaction. This competing series of events is very similar to an issue discussed by the Seventh Circuit in *Antoine v. Ramos*, 497 Fed. App'x 631, 634-35 (7th Cir. 2012).

In *Antoine*, Plaintiff alleged that he filed numerous grievances during a six month period that led to retaliation. Specifically, he claimed that after one grievance he experienced a retaliatory shakedown that led to a disciplinary ticket for contraband, and just days later he got a "fabricated" disciplinary report that alleged he had intimidated and threatened an officer by stating he would file a lawsuit against him. Plaintiff claimed that he never made this threat. The Seventh Circuit found that whether Plaintiff made a threat was a dispute of fact that could not be resolved on the available summary judgment record.

Here, the series of events is strikingly similar. In the disciplinary ticket, Rakers alleged that Plaintiff was behaving in a disruptive fashion, was yelling, raising tensions on the unit, and refusing direct orders. By contrast, Plaintiff claims he tried to have a civil conversation with Rakers that included him mentioning he might file a grievance. As the Court noted above, grievance activity is generally protected, but here at the time of the alleged retaliation, Plaintiff had not yet filed any grievance. He ultimately filed his grievance on January 9, 2023, at least a few weeks after the December 13 interaction, and December 22, 2022, adjustment committee hearing. The mere mention that he would or might file a grievance does not necessarily bestow the interaction with the status of protected speech. Instead, the true question here is whether Plaintiff was having a civil conversation with Rakers about his access to yoga therapy, or whether he was engaged in a verbal dispute. Backtalk is not protected, but if the contents of the disciplinary report are actually fabricated and Plaintiff was not talking back, then it is possible he has a claim. This is on all fours with *Antoine*. Thus, construing the complaint broadly in Plaintiff's favor, he has made sufficient allegations at this juncture to proceed against Rakers on a theory of retaliatory discipline.

The central dispute to be examined is if Plaintiff engaged in protected speech, or if he engaged in backtalk. If it is discovered that Rakers had a sound basis for disciplining Plaintiff, then the claim may ultimately fail. *See e.g., Harris v. Walls*, 604 Fed. App'x 518, 521 (7th Cir. 2015) ("a prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if officials show,

without contradiction, that they would have disciplined him anyway for a legitimate reason.")

To the extent that Plaintiff mentions preliminary injunctive relief in the form of an order that Rakers stay at least 150 feet away from him, his request does not meet the requirements of Federal Rule of Civil Procedure 65 and the Prison Litigation Reform Act. To obtain preliminary injunctive relief, a plaintiff must establish that (1) his underlying case has a reasonable likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). If a plaintiff establishes these three elements, the Court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.* at 662. Mandatory preliminary injunctions – those requiring an affirmative act – are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

Here, Plaintiff has not established that he will suffer irreparable harm without interim relief. In fact, he does not say anything at all about facing a discrete harm from Defendant Rakers after the single incident in December of 2022. Additionally, "[a] movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). The precise likelihood of success required depends in part on

the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As the Court noted above, the allegations in this case appear to present an incredibly close call, so Plaintiff would need to demonstrate a credible and imminent threat of harm to tip the balance in favor of interim injunctive relief. For these reasons, the request for preliminary injunctive relief will not be addressed further at this time. If Plaintiff wishes to renew such a request in the future, he must file a freestanding motion that complies with Rule 65, and he must support it with a brief that clearly explains the immediate threat to his safety.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 2** of the Amended Complaint (Doc. 13) survives against Defendant Adam C. Rakers. By contrast, **Claim 1** is dismissed without prejudice for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendant Rakers: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 13), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

**Dated: March 19, 2025**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.